# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JANUARY SESSION, 1997

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9512-CR-00370** |
| | ) | |
| Appellee, | ) | |
| | ) | **SHELBY COUNTY** |
| | ) | |
| **V.** | ) | |
| | ) | **HON. W. FRED AXLEY, JUDGE** |
| **JASON MORIN,** | ) | |
| | ) | **(AGGRAVATED ASSAULT,** |
| Appellant. | ) | **RECKLESS ENDANGERMENT)** |

FOR THE APPELLANT:

**TIMOTHY JOEL WILLIAMS**
147 Jefferson Avenue, Suite 909
Memphis, TN 38103

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**S. SCOTT JACKSON**
Assistant Attorney General
500 Charlotte Avenue
Nashville, TN 37243-0491

**JOHN W. PIEROTTI**
District Attorney General

**JUDSON W. PHILLIPS**
Assistant District Attorney General
201 Poplar Avenue, 3rd Floor
Memphis, TN 38103

OPINION FILED _____

AFFIRMED AS MODIFIED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted of two counts of aggravated assault and one count of reckless endangerment following a jury trial in Shelby County Criminal Court. The Defendant was sentenced to six (6) years on one aggravated assault charge and four (4) years on the other aggravated assault charge to be served concurrently. The Defendant was sentenced to two (2) years on the reckless endangerment charge to run consecutively to the aggravated assault sentences. He argues three issues in this appeal: (1) Whether the trial court erred in disallowing cross-examination concerning the police pursuit policy; (2) whether the trial court erred in instructing the jury that it could convict the Defendant on both counts of the aggravated assault based upon one single transaction; and (3) whether the trial court erred in sentencing the Defendant to consecutive sentences. As modified, we affirm the judgment of the trial court.

In the early morning hours of September 10, 1994, the Defendant and his friends were at a bar called Mugs in the Raleigh area of Memphis. Police were called to the scene because of an altercation in the bar. When the police began to arrive, the Defendant ran out of the bar, carrying what was thought to be a club. He then jumped into the vehicle in which he had come to the bar with a friend, and drove out of the parking lot. The officers who were responding to the call followed the Defendant signaling him to pull over. The Defendant did not stop and proceeded to lead the officers on a high speed chase that lasted twenty-five (25) to thirty (30) minutes. The speeds reached during the chase were

estimated to be around seventy miles an hour. At certain points during the chase, the speed reached was twice the speed limit of the area.

The chase led to several dangerous situations. At one point during the chase, the Defendant hit a dog. The Defendant also drove onto a field that was located behind a local high school. He proceeded to drive around in circles while on the field with the police chasing him. After driving off the field, the Defendant ran a stop sign. As he was running this stop sign, the Defendant ran into a police car driven by Officer D. R. Williams, spun around 360 degrees and continued to flee. Officer Williams hit his head against the window of his vehicle making him dizzy, and he was unable to work the remainder of his shift. Officer Williams also sustained an injury to his leg, but did not receive medical attention. The Defendant eventually came to a stop at a dead end street and attempted to flee on foot. He was caught and arrested.

I.

The Defendant's first issue is whether the trial court erred in not allowing the Defendant to cross-examine the police officers, who testified at trial, concerning their violation of the police pursuit policy. Following a discussion out of the presence of the jury, the trial court ruled that the Defendant could not cross-examine the officers concerning the Memphis Police Department's pursuit policy. The State's objection, which was sustained by the trial court, was that the pursuit policy was not relevant to the proceedings. The Defendant now argues that the pursuit policy was indeed relevant, and the trial court erred in sustaining the State's objection.

Rule 401 of the Tennessee Rules of Evidence states that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Advisory Commission Comments that accompany Rule 401 state, "[t]he materiality concept is found in the words, 'any fact that is of consequence to the determination of the action.' To be relevant, evidence must tend to prove a material issue." See also, State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978).

In its brief the State argues that the police pursuit policy is not a material issue in the case sub judice. We agree. The issue at trial was whether the Defendant was guilty of reckless endangerment and aggravated assault. Whether the officers violated the police pursuit policy had no bearing on the Defendant's guilt or innocence.

This issue is without merit.

II.

The Defendant's second issue is whether the trial court erred by instructing the jury that it could convict Defendant on both counts of the aggravated assault charges, based upon one single transaction and involving one criminal mental state. The Defendant was indicted on two counts of aggravated assault. The first count alleged that Defendant, "on September 10, 1994, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully and intentionally, by use of a deadly weapon, to-wit: a motor vehicle, cause bodily

-4-

injury to D. R. Williams, in violation of T.C.A. 39-13-102." Aggravated assault under this provision is a Class C felony. The second count alleged that Defendant, "on September 10, 1994, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully and recklessly, by use of a deadly weapon, to-wit: a motor vehicle, cause bodily injury to D. R. Williams, in violation of T.C.A. 39-13-102." Aggravated assault under this provision is a Class D felony. These two counts are both for aggravated assault stemming from the collision between the Defendant and the officer. The two aggravated assault charges are identical except for the mental states of intentional in Count 1 and reckless in Count 2.

We find that these two convictions for aggravated assault violate the double jeopardy clause of the United States and Tennessee Constitutions. Therefore, the our court will address the issue of double jeopardy as this is plain error. "An error which has affected the substantial rights of an accused may be noticed at any time . . . in the discretion of the appellate court where necessary to do substantial justice." Tenn. R. Crim. P. 52(b).

Double jeopardy is a long-standing principle in both the United States and Tennessee Constitutions. This court recently addressed Double Jeopardy in State v. Pelayo, 881 S.W.2d 7 (Tenn. Crim. App. 1994):

> The double jeopardy clauses of the United States and Tennessee Constitutions guard against three evils: a second prosecution after acquittal for the same offense; a prosecution for the same offense after conviction; and multiple convictions or punishments for the same offense. Ohio v. Johnson, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425(1984); Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). The common denominator of each is whether the offenses involved are the same. Before multiple

convictions can stand, it must be clear that the offenses supporting the convictions are "wholly separate and distinct." State v. Goins, 705 S.W.2d 648, 650 (Tenn. 1986).

Pelayo, 881 S.W.2d at 10.

The Tennessee Supreme Court recently set out the requirements for resolving a double jeopardy punishment issue under the Tennessee State Constitution. These requirements are:

> (1) a Blockburger [v. United States, 284 U.S. 299 (1932)] analysis of the statutory offenses; (2) an analysis, guided by the principles of Duchac [v. State, 505 S.W.2d 237 (Tenn. 1973), cert. denied, 419 U.S. 877 (1974)], of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes. None of these steps is determinative; rather the results of each must be weighed and considered in relation to each other.

State v. Denton, 938 S.W.2d 373, 381 (Tenn. 1996).

When an incident violates two distinct statutes and it needs to be determined whether there are two offenses or one, the test to be applied under Blockburger is, "whether each provision requires proof of an additional fact which the other does not." Blockburger, 299 U.S. at 304. The Defendant was twice convicted of aggravated assault, once under Tennessee Code Annotated section 39-13-102(a)(1)(B) and once under Tennessee Code Annotated section 39-13-102(a)(2)(B). These provisions are identical except for the mental state required for each one. The statutes in the case sub judice clearly do not require proof of an additional fact. Both require the proof of an assault with a deadly weapon, but with different mental states. The facts required are the same.

The analysis required under Duchac is based on the actual evidence in the case. Duchac stated the test as:

> "One test of identity of offenses is whether the same evidence is required to prove them. If the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes. "[sic] If there was one act, one intent, and one volition, and the defendant has been tried on a charge based on that act, intent, and volition, no subsequent charge can be based thereon, but there is not identity of offenses if on the trial of one offense proof of some fact is required that is not necessary to be proved in the trial of the other, although some of the same acts may necessarily be proved in the trial of each."

Duchac, 505 S.W.2d at 239 (quoting 21 Am. Jur. 2d, Criminal Law, § 82). The evidence required to prove each of the Defendant's aggravated assault convictions is the incident of him running into the car of Officer Williams. Therefore, the same evidence is required to prove each conviction.

Continuing the analysis set out in Denton, there were not multiple victims. The indictment specifically names the officer as the injured party in both of the aggravated assault counts. The fourth requirement, comparison of the purposes of the respective statutes is the final part of the analysis. It can safely be assumed that the purposes of the two aggravated assault statutes are the same.

In this case, dual convictions of the Defendant for aggravated assault violate the protections against Double Jeopardy. It is clear under the analysis required under Denton, that the Defendant has been convicted twice of the same crime for one particular incident.

Therefore, the Defendant can only have one conviction for aggravated assault. When a defendant has been convicted of two counts for one transaction and one offense is a lesser included offense to the other, the offenses can be merged resulting in one conviction. State v. Banes, 874 S.W.2d 73, 81 (Tenn. Crim. App. 1993). The first count of aggravated assault is a Class C felony and the second count is a Class D felony. The mental state required for the first conviction is "intentionally" and the mental state required for the second count is "recklessly." The test to determine whether something is a lesser included offense of another is whether "it is impossible to commit the greater offense without first having committed the lesser." State v. Layne, 623 S.W.2d 629, 637-38 (Tenn. Crim. App. 1981). It is evident in the case sub judice that one could not commit aggravated assault, Class C felony, without committing aggravated assault, Class D felony. Therefore, the second conviction, of Class D aggravated assault should be merged into the Class C felony.

III.

The merger of these two offenses requires the court to impose a sentence for the one conviction for Class C aggravated assault. The Defendant was sentenced to six (6) years on the first count of aggravated assault and four (4) years on the second count of aggravated assault. The trial court stated that his reason for a higher sentence on the first count was "that the court feels that the difference between count one and count two is that there is a change in the wording of the indictment in the reckless at [sic] mental state between the two." However, the mental state is not a valid enhancement factor under Tennessee

Code Annotated section 40-35-114. Therefore, it cannot be used to enhance a sentence.

A Range I sentence for a Class C felony is three (3) to six (6) years. The trial court found several enhancement factors which do apply to the case sub judice: (1) the Defendant has a previous history of criminal convictions and criminal behavior; (6) the amount of damage to property was particularly great; (8) the Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and (10) the Defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(1), (6), (8) & (10). In addition to these enhancement factors, under Tennessee Code Annotated section 39-13-102(d), it is an enhancement factor if the victim of an aggravated assault is a police officer, as in the case sub judice. The court can find no mitigating factors. Therefore, the appropriate sentence for the aggravated assault conviction is the maximum of six years, imposed by the trial court.

IV.

The Defendant's final issue is whether the trial court erred by ordering the sentence for the reckless endangerment conviction to be served consecutively to the sentence for aggravated assault. Proof of the existence of facts necessary to justify consecutive sentencing must only be established by a preponderance of the evidence. Tenn. Code Ann. § 40-35-115(b). Also, consecutive sentencing requires that,

> "[I]n addition to the application of general principals of sentencing, the finding that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed."

State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

The trial court stated two reasons on the record for sentencing the Defendant to consecutive sentences. The first reason is that the Defendant is a professional criminal. Tenn. Code Ann. § 40-35-115(b)(1). The second reason is because the Defendant has an extensive criminal record. Tenn. Code Ann. § 40-35-115(b)(2).

The Defendant meets the criteria for Tennessee Code Annotated section 40-35-115(b)(1), that the defendant is a professional criminal and turns to criminal acts as the source of his livelihood. The Defendant was not employed at the time of the incident. In the pre-sentencing report there is a reference to former employment for one year at Kmart. The Defendant's sketchy work history and extensive criminal record, including several theft related offenses, lead the court to believe that the Defendant has turned to crime for a major source of his livelihood.

The Defendant also meets the criteria for Tennessee Code Annotated section 40-35-115(b)(2), an extensive criminal history. Although the Defendant was only twenty-two (22) at the time of sentencing, the Defendant has an extensive prior record including offenses commited as both an adult and a juvenile. The following is a list of the Defendant's juvenile record and the

dispositions: Shoplifting-released to mother; malicious mischief-placed on probation in custody of his mother; shoplifting-released to mother; grand larceny-released to mother; no driver's license, driving on sidewalk, no helmet- released to father; larceny of a bicycle-released with court costs to mother; no driver's license, reckless driving- no petition filed; receiving and concealing stolen property-child placed under care of Youth Services 8/11/87, released into custody of mother 11/25/87, 2/4/88 violation of probation; carrying a knife with blade exceeding four inches- no dispostion found; aggravated assault-child committed to Tennessee Department of Correction (TDOC) for indefinite period of time; shoplifting-no petition filed; no driver's license, reckless driving-child already under committment to TDOC; grand larceny (auto)-petition sustained on guilty plea, home placement terminated; grand larceny (auto), receiving and concealing stolen property over $200(2 counts), receiving and concealing stolen property under $200-child already under committment to TDOC; grand larceny (auto)-no petition filed; assault and battery-no petition filed; theft of property under $500-no petition filed, restitution made; assault-no petition filed, child has reached the age of majority and is presently incarcerated for an extended period of time; simple possession of controlled substance and reckless driving-no petition filed, child has reached the age of majority and is presently incarcerated for an extended period of time; speeding and driving on a revoked license-no petition filed, child has reached the age of majority and is presently incarcerated for an extended period of time.

The Defendant's adult record is also very lengthy. The following is a list of the Defendant's adult record: Speeding and driving without a license/revoked-pled guilty to both, reduced to no driver's license, paid fines and court costs;

driving without a license/revoked, driving with a revoked license-amended to no driver's license, pled guilty, paid fines and costs; assault pled guilty, sentenced to 30 days with 29 suspended, probation for 6 months, fines and costs; public intoxication-nolle prossed; public intoxication-nolle prossed; driving without a license/ revoked-pled guilty, sentenced to four days and costs; driving without a license/revoked-pled guilty, fines and costs; driving without a license/revoked-pled guilty sentenced to 10 days; petition to declare and Habitual Motor Vehicle Offender-petition granted; theft of property under $500-nolle prossed without costs; speeding, driving without license/revoked and driving revoked license-pled guilty, sentenced to 2 days, fines and costs; driving without a license/revoked and driving revoked license-pled guilty sentenced to 10 days and fines on first count, pled guilty, sentenced to 1 day on second count, costs on both; theft of property under $500-pled guilty, fines and costs. After the offenses in the case sub judice occurred, the Defendant was also charged with aggravated assault and aggravated burglary.

It is clear that the Defendant has a very extensive record, especially considering his young age. An order was entered declaring the Defendant an Habitual Motor Vehicle Offender when the Defendant was seventeen days shy of his twenty-first birthday. When his juvenile record is included, the number of charges and convictions is astounding. This court has recently held that juvenile offenses may be considered to justify consecutive sentences. State v. Jeffrey A. Mika, No. 02C01-9508-CR-00244, Shelby County, slip. op. at 10-11 (Tenn. Crim. App., Jackson, filed Feb. 25, 1997); State v. Robert Chapman, No. 02C01-9510-CR-00304, Shelby County, slip. op. at p. 8 n.1 (Tenn. Crim. App., Jackson, filed

Jan. 14, 1997).  The Defendant clearly meets the criteria in Tennessee Code Annotated sections 40-35-115(b)(1) and (2), to justify consecutive sentencing.

We believe that the Defendant has been properly sentenced to a consecutive sentence due to his extensive record.  The Defendant was placed in the custody of the Department of Corrections when he was a juvenile, and it did not seem to improve his behavior.  The incident in question had the potential to end in a fatal accident.  The Defendant led the police on a twenty-five (25) to thirty (30) minute high speed chase, sometimes reaching speeds of seventy (70) miles an hour, through a small area of Memphis.  The speed of the chase sometimes reached twice that of the speed limit of the area.  An officer testified at the sentencing hearing that he had been involved in three pursuits of the Defendant.  The Defendant has been properly sentenced to a consecutive sentence based on his extensive criminal history and the above factors.  It is clear such a sentence is necessary to protect the public.  The effective sentence of eight (8) years reasonably relates to the severity of the offenses.

The judgment of the trial court is modified in part and affirmed in part.  The Class D aggravated assault is merged into the Class C aggravated assault with a sentence of six (6) years to be served for this conviction.  The Defendant's sentence of two (2) years for reckless endangerment remains a consecutive sentence to the aggravated assault sentence.

_____
THOMAS T. WOODALL, Judge

CONCUR:

-14-

_____
JOE B. JONES, Presiding Judge


_____
PAUL G. SUMMERS, Judge